[Crim. No. 13028.   Second Dist., Div. One.   Dec. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD L. MERCER, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Elliott D. McCarty, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of attempted escape from jail.

In an information filed in Los Angeles on March 24, 1966, defendant was charged with attempted escape from jail in violation of sections 4532, subdivision (b) and 664, Penal Code, in that on February 28, 1966, he attempted to escape from jail while confined therein as a prisoner and while convicted of a felony, namely, grand theft in violation of section 487, subdivisions 1 and 3, Penal Code, and while awaiting sentence on those charges. It was further charged that previously on December 8, 1961, he had been convicted of grand theft in Los Angeles and had served a term in prison therefor and that he had been convicted of a violation of Penal Code, section 475 (passing forged notes), on December 20, 1961, in Los Angeles, and had served a term in prison therefor. Defendant pleaded not guilty. He admitted the charged prior convictions. In a jury trial defendant was found guilty as charged and sentenced to the state prison, the term to be consecutive to any other sentence being served. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: On February 28, 1966, at about 4:30 a.m., Deputy Sheriff Wendell, while patrolling the outside of the jail saw defendant in the window

of module 2400 (cell tank) of the jail. Cell tank 2400 was on the second tier of the module which was the mezzanine floor of the building. Defendant was at the window sawing the bars. The officer heard a sawing noise, metal to metal. Defendant was observed by the officer for about a minute.

The sawing noise of metal to metal drew the officer's attention to a well-lighted open window where he saw the upper portion of defendant's body which was pressed tightly to the window. There is an 18-inch ledge outside the window and about 3 to 4 feet below the bottom of the outside window. From the ledge to the ground is a distance of about 22 feet. Upon observing defendant for about a minute, Wendell went into the building to report to the watch commander that an inmate was attempting to escape from the jail through the window. Defendant was described as having bushy hair and a heavy mustache.

After the attempted escape, it was determined from an examination of the window bars that there were fresh cuts and saw marks thereon. The cuts were about an inch deep and cut across the full width of the bars which were square and about an inch and a quarter in diameter. There was no metal screen on the outside of the window.

A hacksaw with a blade was found lying on the runway in the vicinity of cell number 11 of row A. The hacksaw was wrapped in a newspaper and jail tissue. Four hacksaw blades tied together and wrapped in a T-shirt were found in the rear of defendant's cell.

Defendant was then observed from the inside of the jail near the window. He jumped off of a ledge and Officers Chester and Alvin took up a pursuit of defendant. Officer Keister saw defendant in the area immediately after Keister heard Wendell's report of the attempted escape in progress. When Keister entered the area defendant started to climb an 8-foot high cell front bars up to row C. Keister followed the defendant. Defendant was seen to enter cell number 12 of row C and then come right out. A number of blankets and mattress covers, cut into strips and tied together to form a rope-like object, were discovered in cell number 12 of row C within a minute or so of defendant's apprehension.

Officer Keister caught up with defendant and before the officer said anything to him, defendant volunteered, "I did it. No one else was involved." Keister said, "Did what?" and defendant replied, "Sawed on the window." There was no further talk between Keister and defendant. Defendant was

turned over to Officer Lloyd. At about 4:35 a.m., Lloyd took defendant to the shower area nearby. Lloyd advised defendant of his right to remain silent, told him that any statements he made could be used against him in any proceeding, that he was entitled to the right of counsel and that he could make a telephone call to counsel as quickly as they could get a telephone to him and that he was being charged with the offense of attempting to escape from jail. When asked by the officer whether he understood his rights, defendant answered in the affirmative. Defendant was not told that he had a right to have the public defender or some other court appointed counsel in the event he was indigent. After being so advised, and before any questions were put to defendant by Lloyd, defendant blurted out, "Don't bother anybody else. All the blades are mine." No force or threats were made to cause defendant to speak about the case, nor was there any promise of immunity, a lesser sentence, probation or any other type of reward for making such statements.

In response to a direct question of Lloyd, namely, ". . . why he was cutting on the bars" defendant replied, "I would rather not talk about that."

It was stipulated that defendant was lawfully confined on February 28, 1966, in the county jail while awaiting sentence on a prior conviction of grand theft.

Defendant's defense was that this was a case of mistaken identity, that an inmate handed him the blades and said, "Hey, do me a favor. Hold these blades for me" whereupon that inmate ran away. His testimony was impeached by the showing of previous felony convictions.

Appellant now asserts that he was not properly advised of his right to counsel in the event he could not afford to retain counsel.

The record recites that appellant made several statements, the first being, "I did it. No one else was involved." That statement was initiated by appellant, it was spontaneous and not in answer to any question put by any officer. True it is that appellant might be deemed to have been in custody, but Keister was at that time conducting a routine investigation of an unsolved crime, and he was not engaged in any active interrogation which lent itself to eliciting incriminating statements from appellant. The receipt of such a statement into evidence does not violate the rule of *Miranda* v. *Arizona*, 384 U.S. 436. At page 478 [16 L.Ed.2d 694, at p. 726, 86 S.Ct. 1602, 10 A.L.R.3d 974] of *Miranda* the court said:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime,[1] or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

No intent is shown in any of the cases to discourage a suspect from volunteering to the police his complicity in the perpetration of a crime, or to prohibit the police from receiving and acting upon such confessions or statements.

The appellant's second statement, "I did it. No one else was involved" was volunteered and not in response to any question by any officer. The officer then asked, "Did what?" and appellant replied, "Sawed on the window." The question put by the officer clearly followed a statement initiated and made by appellant. The officer was investigating an unsolved crime and as said in *Miranda* v. *Arizona, supra,* at page 477 [16 L.Ed.2d 694 at p. 725]:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . *General on the scene questioning* as to the facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (Italics ours.)

▮ A neutral inquiry of an officer such as "what happened?" upon arriving at the scene of a crime is proper and the response of a suspect is admissible. (See *People* v. *Sanchez*, 65 Cal.2d 814 [56 Cal.Rptr. 648, 423 P.2d 800]; *People* v. *Pike*, 239 Cal.App.2d 237 [48 Cal.Rptr. 575]; *People* v.

---

"[1]See *People* v. *Dorado* (1965) 62 Cal.2d 338 at p. 354 [42 Cal.Rptr. 169, 398 P.2d 361] [footnote 8]."

*Cotter,* 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862]; *People* v. *Jacobson,* 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555] and *People* v. *Charles,* 66 Cal.2d 330 [57 Cal.Rptr. 745, 425 P.2d 545].)

The fact that appellant supplied some of the details which explained his first statement, in response to Keister's neutral inquiry is of no importance because "the questioning was initiated by defendant, . . . the [defendant's] statement was volunteered in response to a neutral inquiry invited by defendant's own remarks; . . . the conduct of the police was neither intimidating nor accusatory, nor did it appear in any way designed to elicit incriminating statements; . . . [and] defendant had virtually confessed in his earlier statements." (*People* v. *Treloar,* 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620].) Keister did not employ any "inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth." (*People* v. *Cotter, supra,* 63 Cal.2d 386; see also *United States* v. *Konigsberg,* 336 F.2d 844, 853; *People* v. *Lewis,* 244 Cal.App.2d 325 [53 Cal.Rptr. 108].)

The third statement, namely, "Don't bother anybody else. All the blades are mine." came out immediately after Officer Lloyd advised appellant of his constitutional rights (to remain silent, to counsel and that statements could be used in a subsequent proceeding). The statement was not in answer to any question, was unsolicited and outside the scope of the *Miranda* rule. The police need not gag a suspect who wishes to confess his commission of an unsolved crime. (See *People* v. *Hines,* 66 Cal.2d 348, 354 [57 Cal.Rptr. 757, 425 P.2d 557]; *People* v. *Cotter, supra,* 63 Cal.2d 386; *People* v. *Collier,* 239 Cal.App.2d 831 [49 Cal.Rptr. 109]; *People* v. *Jones,* 244 Cal. App.2d 378, 382 [52 Cal.Rptr. 924].)

The fourth statement ("I would rather not talk about that.") constitutes nothing but a reluctance to speak further about the matter. No prejudice could have arisen from receiving that statement into evidence.

The contention of appellant to the effect that the statements made were inadmissible because he had not been advised of his right to counsel in the event of his being an indigent is, under the circumstances, without merit.

The date of the trial was June 16 to June 20, 1966, and, consequently, the case comes within the ruling of *Miranda, supra,* 384 U.S. 436, and *Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]. The advice given to appellant complied with the rules of *Escobedo* and *Dorado.*

We are persuaded that none of the first three statements was made in reply to interrogation; certainly neither of the first two statements come into that category. Assume, however, that it was error to receive the third statement into evidence from a review of the entire record, this court can and does declare its belief that any such error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

This case, in any event, falls under the exception to the reversible *per se* rule stated in *People* v. *Jacobson, supra,* 63 Cal.2d 319, and in *People* v. *Cotter, supra,* 63 Cal.2d 386. (See *People* v. *Paton,* 255 Cal.App.2d 347, 354-356 [62 Cal.Rptr. 865].)

The third and fourth statements added nothing to the essentials of the crime of attempted escape not contained in the first two admissible statements. The statements do not contradict each other in any substantial degree. No significant different details are added by the third statement, no missing essential element of the crime is supplied by the third statement.

We are satisfied beyond a reasonable doubt that any possible error in the receipt into evidence of appellant's third and fourth statements was harmless and, therefore, cannot reverse the judgment. (*Chapman* v. *California, supra,* 386 U.S. 18.)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 15, 1968.