[Civ. Nos. 27414, 27418. First Dist., Div. One. Jan. 14, 1970.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF
SANTA CLARA COUNTY, Respondent;
CLARENCE PAUL MAHLE, JR., Real Party in Interest.

[Crim. No. 8278. First Dist., Div. One. Jan. 14, 1970.]

In re CLARENCE PAUL MAHLE, JR., on Habeas Corpus.

(Consolidated Cases.)

## Counsel

Thomas C. Lynch, Attorney General, Derald E. Granberg and Clifford K. Thompson, Jr., Deputy Attorneys General, for Petitioner in Civ. Nos. 27414 and 27418 and for Respondent in Crim. No. 8278.

Sheldon Portman, Public Defender, and Rose E. Bird, Deputy Public Defender, for Real Party in Interest and for Petitioner in Crim. No. 8278.

No appearance for Respondent in Civ. Nos. 27414 and 27418.

## Opinion

**MOLINARI, P. J.**—Clarence Paul Mahle, Jr., hereinafter referred to as "defendant," is presently confined in the Santa Clara County jail awaiting retrial of a case in which a second degree murder conviction was previously reversed on the ground of erroneous jury instructions. (*People* v. *Mahle* (1969) 273 Cal.App.2d 309 [78 Cal.Rptr. 360].) Petitioner has not furnished bail fixed at $4,500.

Pending retrial, defendant moved, pursuant to Penal Code section 1538.5,[1] to suppress certain evidence. The trial court granted the motion. Pursuant to the same code section the prosecution filed a notice of intention to seek review by writ of mandate under subdivision (o) of the section, whereupon defendant moved to be released from custody on the basis that he was entitled to such release under section 1538.5, subdivision (k). Said motion was denied and defendant filed a petition for writ of habeas corpus in this court and we issued an order to the sheriff to show cause why defendant should not be released from custody.

Subsequently, and within the time provided for in section 1538.5, subdivision (o), the People filed a petition for writ of mandate seeking appellate review of the order suppressing evidence. The People also filed a petition for writ of prohibition seeking to stay the trial pending adjudication of the merits of the petition for writ of mandate. We issued an alternative writ of mandate and an alternative writ of prohibition.

Since all of these proceedings are related we proceed to consider all of them in this opinion.

---

[1]Unless otherwise indicated, all statutory references hereinafter made are to the Penal Code.

## The Factual Background[2]

On September 20, 1967, San Jose Police Officers Hazen and Esparza responded to a police radio broadcast indicating that a stabbing had occurred at 750 North Twenty-third Street, apartment 22. When they arrived on the scene a man waved down the officers and said, "Apartment 23 upstairs." En route to apartment 23, Hazen passed apartment 21, noting that its door was wide open. A voice within apartment 21 said, "In here, Officers." Hazen entered and observed defendant seated in a chair in the living room. Hazen asked him "What happened?" Defendant replied, "I did it and I'm sorry."

Officer Hazen informed defendant that he was under arrest for assault with a deadly weapon. As defendant was being handcuffed Hazen asked defendant, "Where is the knife?" Pointing, defendant responded, "Over on the kitchen sink." From his location in the living room, Hazen could see the knife on the kitchen counter. Officer Esparza then went into the kitchen area and obtained the knife which was on the kitchen counter.

Hazen then asked defendant if he had any weapons on his person. Defendant indicated that he had a pocket knife which Hazen removed. No further questions were asked of Mahle. Hazen instructed another officer to take defendant to the detective bureau and to advise him of his constitutional rights.

Mrs. Mahle was found in apartment 23 bleeding profusely from a chest wound. She died approximately an hour and a half later.[3]

The trial court suppressed the knife and photographs of the knife and the kitchen sink area on the theory that it was the "poisoned fruit" of an illegally obtained statement because defendant's statement concerning the whereabouts of the knife was received in violation of the rule declared

[2]These facts were adduced by testimony presented at the hearing of defendant's motion to suppress pursuant to section 1538.5.

[3]In their petition for writ of mandate the People set out the additional facts that the victim's sister, Mrs. Iverson, was a percipient witness; that she saw Mrs. Mahle staggering and defendant standing with a bloody knife in his hand; that defendant stated "I got her. I got her good this time"; and that Mrs. Mahle said "He stabbed me in the heart." These facts were not presented to the court below when it heard the motion to suppress. The People now request that under Evidence Code sections 452 and 459 we can take judicial notice of the reporter's transcript of the first trial in which these facts appear. We decline to take judicial notice of these facts on the basis that they are evidentiary matters incident to the motion to suppress which should have been presented to the court below and are not matters of which we are required to take judicial notice. In this proceeding "we are required to determine the matter on the basis of the record of the trial court" (*Thompson* v. *Superior Court,* 262 Cal.App.2d 98, 106 [68 Cal.Rptr. 530]) since a proceeding to suppress evidence under section 1538.5 "is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact." (*People* v. *Heard,* 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].)

in *Miranda* v. *Arizona* (1966) 384 U.S. 436, 444, 477, 479 [16 L.Ed.2d 694, 709, 725, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974], which requires that an accused be advised prior to his being questioned that he has a right to remain silent, that any of his statements may be used against him, and that he has the right to the presence of an attorney, either retained or appointed.

### Applicability of Section 1538.5

Subdivision (a) of section 1538.5 provides, in pertinent part, that a defendant "may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on the ground that: (1) The search or seizure without a warrant was unreasonable; . . ." In the instant case defendant contends that the knife and photographs were obtained by the police as a result of a statement obtained from him in violation of the rule of *Miranda* and that, therefore, it was properly excluded under section 1538.5 as the "poisonous fruit" of the illegal statement. The People, on the other hand, urge that even if it be conceded that these items were the fruits of an illegally conducted interrogation, section 1538.5 is not applicable because it deals solely with motions to suppress evidence on Fourth Amendment grounds only, that is, fruits of an unlawful search and seizure, and not the fruits of a statement obtained in violation of *Miranda*.

In considering these contentions we observe, initially, that the physical byproducts of illegally obtained statements are inadmissible during the trial of the declarant as the "poisonous fruit" of the illegal statements. (*People* v. *Schader,* 71 Cal.2d 761, 778 [80 Cal.Rptr. 1, 457 P.2d 841]; *People* v. *Buchanan,* 63 Cal.2d 880, 887 [48 Cal.Rptr. 733, 409 P.2d 957]; *Wong Sun* v. *United States,* 371 U.S. 471, 485 [9 L.Ed.2d 441, 453, 83 S.Ct. 407].) We also observe that in *People* v. *Superior Court,* 275 Cal.App.2d 49, 52 [79 Cal.Rptr. 704], it was held that section 1538.5 "is limited solely to questions involving searches and seizures and is inapplicable to the resolution of issues arising from challenged confessions or admissions, except those that constitute the fruit of a search and seizure." In that case, the motion to suppress was directed only to the *statements* made by the defendants and not to any items of evidence obtained as a result of the statements.

In *People* v. *Superior Court,* 70 Cal.2d 123, 127 [74 Cal.Rptr. 294, 449 P.2d 230], the applicability of section 1538.5 was stated thusly:

"Section 1538.5 . . . provides that a defendant may move to suppress as evidence any tangible or intangible thing *obtained as a result of search or seizure* either with or without a warrant on the ground that the *search or seizure* was *unreasonable.* Unquestionably the section by providing for the motion only where there has been a search or seizure, is directed only toward those searches and seizures which are conducted by government agents and which can be considered unreasonable under constitutional or other enumerated standards." With respect to the standard for reasonableness of a search or seizure, the Supreme Court observed, further, that the standard or test of reasonableness is that required by the Fourth Amendment of the United States Constitution. (P. 128.)

█ In the light of the foregoing it is clear that section 1538.5 is directed to searches and seizures which can be considered unreasonable under constitutional standards. In the present case it is obvious that the police indulged in a search and a seizure. If that search and seizure was brought about as a result of a statement obtained in violation of the rule of *Miranda* it was thereby rendered unreasonable if it was the fruit of official illegality. *(People v. Schader, supra,* 71 Cal.2d 761; *People v. Buchanan, supra,* 63 Cal.2d 880.) █ As pointed out in *Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426], "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Accordingly, if, as held in *Wong Sun,* verbal statements which are the fruit of an illegal search and seizure are protected by the Fourth Amendment (see also *People* v. *Superior Court, supra,* 275 Cal.App.2d 49, 52) on the basis that the policies underlying the exclusionary rule do not "invite any logical distinction between physical and verbal evidence" (371 U.S. at p. 486 [9 L.Ed.2d at p. 454]), we apprehend, conversely, that physical evidence which is the fruit of an illegal statement is also protected by the Fourth Amendment.

█ We conclude, therefore, that section 1538.5 is a proper vehicle for bringing a motion to suppress evidence on the ground that it was obtained as the fruit of an illegal statement. Accordingly, when the motion to suppress was granted in the instant case, the People were entitled to petition for a writ of mandate as provided by section 1538.5, subdivision (o) to review the validity of the order. Our inquiry, therefore, is directed initially to whether the statement obtained from defendant which resulted in the search and seizure was obtained in violation of *Miranda.* Before

doing so, however, we proceed to discuss whether defendant was entitled to be released from custody pending such determination and whether the People were entitled to an order staying the trial of the case pending such determination.

## The Habeas Corpus Petition

Section 1538.5, subdivision (k) provides, in pertinent part, as follows: "If the defendant's motion to return property or suppress evidence is granted . . . [and] the people file a petition for writ of mandate or prohibition pursuant to subdivision (o) or a notice of intention to file such petition, the defendant shall be released if he is in custody and not returned to custody unless the proceedings are resumed in the trial court and he is lawfully ordered by the court to be returned to custody."

Defendant contends that the language of section 1538.5, subdivision (k) is mandatory and that the trial court has no discretion but to release the defendant from custody whenever the prosecution files for writ of mandate upon the trial court's granting of the motion to suppress. He argues that failure to follow this statutory "mandate" amounts to a denial of his right to a speedy trial. The Attorney General contends that the phrase "shall be released" as used in the section must be construed as directory because a mandatory construction would render the section invalid as violative of article I, section 6 of the California Constitution which permits denial of bail (and by implication release) to a defendant charged with a capital offense where the proof is evident or the presumption great.

The question raised regarding the construction to be given subdivision (k) of section 1538.5 appears to be one of first impression. In considering this question we are not persuaded by the argument of the Attorney General. A mandatory construction of section 1538.5, subdivision (k) would not necessarily render the section unconstitutional. An exception (the situation covered in art. I, § 6) can be implied on the theory that the Legislature is presumed to intend that its enactments would be given meaning consistent with constitutional requirements. Thus, a constitutional challenge can be avoided by simply construing the section to mean that subdivision (k) is mandatory except where a defendant is charged with a capital offense in a case where the proof is evident and the presumption great. In the instant case defendant is not charged with a capital offense. We are not, therefore, concerned with the implications of article I, section 6 of the California Constitution.

Adverting to subdivision (k) as it applies to the present case we observe, initially, that its language seems to be mandatory because it uses the word "shall." ■ The use of the word "shall" does not in every instance require

that the language be construed as mandatory. Whether the word "shall" occurring in a code section is to be construed to be mandatory or directory depends upon the intention of the Legislature. (*Estate of Mitchell,* 20 Cal.2d 48, 51 [123 P.2d 503].)

█ It is apparent to us that in enacting subdivision (k) of section 1538.5 the Legislature indicated a clear intent that a defendant, successful in having all or a part of the evidence against him suppressed, shall not languish in jail while the prosecution seeks review of the suppression order. This intent is manifested by the language of the statute which not only states that "the defendant shall be released if he is in custody" but that which states that he shall not be returned to custody "unless the proceedings are resumed in the trial court and he is lawfully ordered by the court to be returned to custody. This language is indicative of the Legislature's apprehension that considerable time could elapse while the validity of the suppression order was reviewed on the appellate level and that if the order was affirmed a defendant might have been unduly kept in custody. Accordingly, we therefore conclude that subdivision (k) of section 1538.5 is mandatory.

█ Not so clear, however, is the answer to the question whether the defendant's release is to be without restraint, thus permitting his departure from the state or country, or whether his release can be ordered subject to reasonable court-imposed conditions not inconsistent with the provisions of subdivision (k) of section 1538.5. It appears to us that a statutory construction which permits the People to seek review of an order suppressing evidence only at the cost of permitting the defendant to place himself beyond the trial court's jurisdiction is unreasonable. Such a construction appears to be unwarranted in view of the language in the statute that a defendant can be returned to custody if the proceedings are resumed in the trial court "*and he is lawfully ordered by the court to be returned to custody.*" (Italics added.) The language we have emphasized obviously assumes a continuing court jurisdiction over the defendant and necessarily assumes the presence of a defendant over whom such jurisdiction could be asserted.

Under section 1318 a court can release a defendant from custody on his own recognizance. When released on his own recognizance the defendant can be required to sign an agreement filed with the court in which the defendant agrees that he will appear at the time and place stated in the agreement and that if he fails to so appear and is apprehended outside the State of California, he waives extradition. (§ 1318.4.) A person so released on his own recognizance who wilfully fails to appear as he has agreed is guilty of a felony, if he was originally charged with the commission of a felony, and guilty of a misdemeanor, if he was originally charged

with the commission of a misdemeanor. (§§ 1319.4 and 1319.6.) These provisions are in no way inconsistent with the scheme of subdivision (k). ■ We hold, therefore, that a person released from custody pursuant to subdivision (k) of section 1538.5 can and should be released on his own recognizance under the terms of sections 1318, 1318.4, 1319.4, and 1319.6.

### The Petition for a Writ of Prohibition

■ Section 1538.5, subdivision (*l*) provides, in pertinent part, as follows: "The trial of a criminal case shall be stayed to a specified date pending the termination in the appellate courts of the State of California of the proceedings provided for in this section, . . ." The obvious purpose of this section is to give effect to section 1538.5, subdivision (o) which permits the People to petition for writ of mandate or prohibition to seek appellate review of the ruling regarding the search and seizure motion.

Defendant opposes the People's petition for a writ of prohibition on three grounds: (1) Since the People, in its petition for writ of mandate, contend that the suppression order based on alleged Fifth Amendment grounds was void, the People do not have the right to appellate review prior to trial; therefore, trial shall not be stayed pending review; (2) issue of writ of prohibition would deny defendant his right to a speedy trial; (3) to allow writ of prohibition to issue staying trial proceedings, while failing to release defendant except upon bail, is a violation of the equal protection clause of the Fourteenth Amendment.

As already pointed out, the first contention is without merit since section 1538.5 is applicable in the present case. The last contention is equally without merit because, as we have pointed out, defendant is entitled to be released from custody pending the determination of the petition for writ of mandate. We are thus left with the speedy trial contention.

■ A defendant is entitled to a speedy trial under both the Sixth Amendment, made applicable to the states by the Fourteenth Amendment (*Klopfer* v. *North Carolina,* 386 U.S. 213 [18 L.Ed.2d 1, 87 S.Ct. 988]), and article I, section 13 of the California Constitution. (*Barker* v. *Municipal Court,* 64 Cal.2d 806, 810-811 [51 Cal.Rptr. 921, 415 P.2d 809].) The function of these constitutional provisions is "to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers." (*In re Begerow,* 133 Cal. 349, 354-355 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513]; *Barker* v. *Municipal Court, supra,* at p. 811.) ■ The determination whether there has been a speedy trial in the constitutional sense depends on the circumstances of each case bearing on the good cause for the delay in bringing the defendant to trial. (*In re Lopez,* 39 Cal.2d 118, 120 [245 P.2d 1];

*Barker* v. *Municipal Court, supra,* at p. 812.) Accordingly, where there has been an extended delay the burden is on the prosecution to show that good cause for the delay in fact existed. (*Barker* v. *Municipal Court, supra.*)

The facts of the instant petition reveal a valid reason for the delay inherent in the very same statute under which defendant's motion to suppress was granted. The remedy of review provided by this statute has been diligently pursued by the People. This pursuit is consistent with section 1050 which, in pertinent part, states that "The welfare of the people . . . requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the duty of all courts and judicial officers and of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice." The "earliest possible time" necessarily implies that the rights of *all parties* must be observed, including that of the People to have an adverse adjudication reviewed pursuant to statutory authorization. The "ends of justice" require that the prosecution be allowed to introduce any and all relevant and constitutionally admissible evidence.

 In the present case the delay in bringing defendant to trial has been occasioned solely by the procedures provided in section 1538.5. There is nothing in the record to indicate wilful oppression or neglect on the part of the state or its officers. Accordingly, good cause for the delay has been shown.

### The Petition for Writ of Mandate

 "A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact." (*People* v. *Heard, supra,* 266 Cal.App.2d 747, 749; see *Thompson* v. *Superior Court, supra,* 262 Cal.App.2d 98, 106.) Accordingly, the duty of determining questions of fact in such a proceeding is for the trial court and its rulings will not be disturbed on appeal if the trial court had before it substantial evidence justifying the rulings. (*People* v. *Superior Court,* 264 Cal.App.2d 165, 166 [70 Cal.Rptr. 362].) This rule, however, is not applicable in cases involving searches and seizures in which the facts bearing on the legality of the search are undisputed and establish as a matter of law that the evidence is or is not admissible. (See *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271 [294 P.2d 23]; and see *People* v. *Superior Court, supra,* 70 Cal.2d 123, 129.) In the instant case the facts bearing on the legality of the search are undisputed. Accordingly, the question whether the subject physical evidence is admissible is one of law.

Defendant contends that his response, "Over on the kitchen sink," to Officer Hazen's question, "Where is the knife?" was obtained in violation of *Miranda* because he had not been advised of his rights under the principles therein articulated. ▮ In considering this contention we note, initially, that Officer Hazen's inquiry "What happened?" upon entering the apartment was not in violation of *Miranda* because there was no focus of investigation upon defendant but merely a "general on-the-scene questioning" in the fact-finding process incident to the investigation of crime. (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 477-478 [16 L.Ed.2d 694, 725-726]; *People* v. *Mercer,* 257 Cal.App.2d 244, 247-249 [64 Cal.Rptr. 861]; *People* v. *Hazel,* 252 Cal.App.2d 412, 417-418 [60 Cal.Rptr. 437]; see *People* v. *Sanchez,* 65 Cal.2d 814, 823-824 [56 Cal.Rptr. 648, 423 P.2d 800]; *People* v. *Jacobson,* 63 Cal.2d 319, 328 [46 Cal.Rptr. 515, 405 P.2d 555].) Accordingly, the response "I did it and I'm sorry" to this neutral inquiry was admissible because defendant was not then in custody, the investigation had not focused on him as an accused, and the inquiry was not such as to constitute a process of interrogation that lent itself to eliciting incriminating statements. (See *Miranda* v. *Arizona, supra;* *People* v. *Arnold,* 66 Cal.2d 438, 445-448 [58 Cal.Rptr. 115, 426 P.2d 515]; *People* v. *Mercer, supra.*) ▮ The next inquiry "Where is the knife?" made while defendant was being handcuffed, was directed to him almost immediately after Hazen told defendant that he was under arrest. Under these circumstances this inquiry appears to be part of the investigatory process initiated by the first question, rather than the undertaking of a process of interrogation having for its purpose the eliciting of incriminating statements.

The circumstances of the instant case are similar to the factual situation in *Sanchez, supra.* There, a correctional officer arriving at the scene of a prison killing made a general inquiry as to "Who did this?" and after the defendant had been pointed out and had surrendered a knife to the officer, the defendant, while being searched by the officer, was asked by him "Why did you do it?" To this inquiry the defendant responded, "He was going to give me a sex beef." The Supreme Court, in holding that a process of interrogation had not been undertaken at the time the defendant's statement was made, determined that the officer's primary concern was apprehension rather than the interrogation of the defendant, and made this pertinent observation: "This episode, embracing but two questions, occupied an almost miniscule time period. Under the circumstances, the two questions appear to be investigatory rather than accusatory in nature." (65 Cal.2d 814, 824.)

Apropos the question whether a process of interrogation has been undertaken, the reviewing court in *Sanchez* observed as follows: ". . . we

must apply an objective test and 'analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.' [Citations.]" (65 Cal.2d at p. 823.)

In *Jacobson, supra,* we also have a factually similar situation. There Police Officer LeBlanc, who had responded to a call, asked the defendant what he had done. The defendant responded that he had done nothing, but when asked by LeBlanc to go next door the defendant said he wasn't coming back because the officer was going to take him to jail. When asked by LeBlanc why this was so, the defendant stated "I knew what I was doing when I did it . . . ." When the defendant, LeBlanc and another officer arrived next door the defendant stated to LeBlanc that he would "find her in the bedroom where I put her." When LeBlanc asked "Who?" the defendant said "My daughter." The defendant then volunteered that he had drowned his daughter. Two officers then went into the bedroom where they found the daughter's body. The defendant was thereupon placed under arrest. The Supreme Court held that the defendant's statements were not inadmissible as violative of the defendant's rights against self-incrimination because LeBlanc's questions "were the justifiable type of routine inquiries designed to determine what actually happened, as a means of commencing an investigation." (63 Cal.2d 319, 328.) The reviewing court observed that under the circumstances, the child not having yet been found dead or alive, "the privilege of the police at the clearly investigatory stage to ask relevant questions which might be necessary to save a life takes precedence over their duty to advise a suspect of his constitutional right to remain silent. [Citation.]" (P. 328.) In the present case when Officer Hazen made the inquiry in question he did not know who had been stabbed nor had he seen the victim. The question was clearly investigatory and was relevant, at least, to the prevention of further bloodshed and the safety of the officer himself.

We are satisfied, moreover, that even if the subject knife and photographs were secured as a result of defendant's custodial interrogation, without a warning of his rights as prescribed by *Miranda,* they could be used against him because they are not the "poisonous fruit" of an illegally obtained incriminating statement. The "poisonous tree" doctrine which defendant urges is that stated in *People* v. *Schader, supra,* 71 Cal.2d 761, 778, as follows: "The fruits of an illegally conducted interrogation are no less inadmissible during the trial of the declarant than his statements themselves." (See also *People* v. *Buchanan, supra,* 63 Cal.2d 880, 887; *People* v. *Varnum,* 66 Cal.2d 808, 812 [59 Cal.Rptr. 108, 427 P.2d 772]; *Wong*

*Sun* v. *United States, supra,* 371 U.S. 471, 485.) In *Wong Sun, supra,* it was recognized, however, that not every fruit of the poisoned tree is incurably tainted. The more apt question is " 'whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]"[4] (*Wong Sun* v. *United States, supra,* at p. 488 [9 L.Ed.2d at p. 455]; *People* v. *Bilderbach,* 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Stoner,* 65 Cal.2d 595, 602 [55 Cal.Rptr. 897, 422 P.2d 585]; *People* v. *Johnson,* 70 Cal.2d 541, 546 [75 Cal.Rptr. 401, 450 P.2d 865].)

In determining the reach of the "fruits" doctrine we must, therefore, use the *Wong Sun* test. (*People* v. *Bilderbach, supra,* 62 Cal.2d 757.) Under this test the subject physical evidence should not be excluded merely because it would not have been obtained but for the illegal statement if the connection between such evidence and the illegal statement has become so attenuated as to dissipate the taint. If, on the other hand, the connection is not so attenuated and the physical evidence has been come at by the exploitation of the illegal statement, then it is excludable. See *People* v. *Bilderbach, supra;* and see *People* v. *Johnson, supra,* 70 Cal.2d at pp. 547-548. Accordingly, if the prosecution can establish that the unlawful statement was not a *sine qua non* or the indispensable cause of the discovery of the subject physical evidence, the exclusionary rule does not apply. (Maguire, *How To Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule* (1964) 55 J.Crim.L. C. & P.S. 307, 313.) Thus, in the instant case, the presumptive taint is removed if the prosecution has established as a fact that the illegal statement merely contributed to the discovery of the allegedly tainted physical evidence and that such information would have been acquired lawfully even if the illegal statement had not been obtained. (*People* v. *Stoner, supra,* 65 Cal.2d 595; *People* v. *Johnson, supra,* at pp. 546, 547-548; *Maguire, supra,* at pp. 313, 317; see Pitler, *The Fruit of the Poisonous Tree,* 55 Cal.L.Rev. 627-630.)

In the instant case the police officers were justified in making a reasonable search for weapons for their own protection since they had reason to believe they were dealing with an armed and dangerous individual. (*Terry* v. *Ohio,* 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868]; *Sibron* v. *New York,* 392 U.S. 40, 64 [20 L.Ed.2d 917, 935, 88 S.Ct. 1889].) Furthermore, since the officers had probable cause to

---

[4]The citation is "Maguire, Evidence of Guilt, 221 (1959)."

arrest defendant, they had the authority to make a proper search incident to the arrest not only for the purpose of ascertaining whether defendant was armed or possessed other things which might be used to assault the officers or effect an escape, but also by the need to prevent destruction of evidence of the crime. (*Preston* v. *United States,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881]; *Sibron* v. *New York,* 392 U.S. 40, 67 [20 L.Ed.2d 917, 937, 88 S.Ct. 1889].) The record discloses, moreover, that the kitchen area was a part of the living room area, the two areas being separated by a serving counter, and that the knife could be seen from the area in which defendant was sitting. ▮ It is well settled, of course, that to see what was in plain sight does not constitute an unreasonable search because under such circumstances there is, in fact, no search for evidence. (See *People* v. *Roberts,* 47 Cal.2d 374, 378-380 [303 P.2d 721]; *People* v. *Gilbert,* 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365] [revd. on other grounds]; *People* v. *Marshall,* 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665]; *Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992].) ▮ It is inconceivable that the police, who were investigating a stabbing and to whom defendant had stated "I did it and I'm sorry," would have overlooked the knife which was in plain sight, particularly when the knife was visible from the area in which defendant was arrested. Accordingly, we conclude from the undisputed facts that it can be said as a matter of law that the statement "Over on the kitchen sink" merely contributed to the discovery of the allegedly tainted knife, and that the knife would have been discovered by the police because it was in plain sight even if the subject statement had not been made. (See *People* v. *Stoner, supra,* 65 Cal.2d 595, 600-602.) The securing of the knife was, therefore, purged of any primary taint that might have attached to it on the basis that the statement was illegally obtained. Upon the same rationale, the photographs of the sink area would be purged of any such taint.

## Conclusion

In view of our determination that the subject physical property is admissible in evidence, the People are entitled to the writ of mandate. The granting of this writ terminates the proceedings under section 1538.5 and places the trial in the posture where it may now resume. Accordingly, since the alternative writ of prohibition has served its purpose it will be discharged. Furthermore, since the trial court would be required to order defendant to be returned to custody upon the resumption of the proceedings; the order to show cause why defendant should not be released from custody in accordance with the provisions of section 1538.5, subdivision (k) has become moot.

Let the peremptory writ of mandate issue in 1 Civil 27414 commanding respondent superior court to annul and set aside its order granting the motion to suppress evidence and to enter a new order denying defendant's motion to suppress the evidence pursuant to section 1538.5. The peremptory writ of prohibition is denied and the alternative writ of prohibition is discharged in 1 Civil 27418. The order to show cause is discharged and the petition for a writ of habeas corpus is denied in 1 Criminal 8278.

Sims, J., and Elkington, J., concurred.