[L.A. No. 29729. In Bank. Sept. 29, 1970.]

LAWRENCE EDWARD LOCKRIDGE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Harvey A. Schneider, Max Solomon and Burton Marks for Petitioners.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Petitioners seek a writ of mandate to compel the Superior Court of Los Angeles County to grant their motion pursuant to section 1538.5 of the Penal Code to suppress testimony as "fruit" of an illegal search.

At the hearing on petitioners' motion, the People and petitioners stipulated to the following facts: "That a gun was recovered pursuant to a search warrant in October 1967, that the serial number of the gun led the police to the sheriff's arrest report at the Lennox sheriff's station which contained the signed statements of the victims of a robbery which had taken place in March of 1965; that as a result of finding that sheriff's report the police interviewed the said robbery victims [Mr. and Mrs. Pesce] and showed the victims photographs including the photograph of each defendant and at that time the robbery victims identified the photographs of the defendants as being photographs of the perpetrators of the robbery and that robbery charges were thereafter filed against the defendants and that a preliminary hearing regarding those robbery charges was had after the robbery victims made a courtroom identification of the defendants. Further, the People stipulate that the search warrant was held by the court [in a prior proceeding (see *Lockridge* v. *Superior Court* (1969) 275 Cal. App.2d 612 [80 Cal.Rptr. 223])] to be legally insufficient and therefore the gun in question had been seized pursuant to an illegal search and seizure."

Deputy Sheriff Pia testified that the Pesce robbery had been investigated in March 1965. In August 1965 the case had been removed from the current or active files, designated "inactive"[1] and placed in the inactive files, where it would remain unless new facts were found which reactivated the case. There had been no active investigation in this case for over two

---

[1] A case is designated "inactive" when all pertinent points have been thoroughly investigated.

years until the Los Angeles Police Department contacted Deputy Sheriff Pia and informed him that the department had two suspects in custody who might have committed the crime.

Petitioners contend that but for the illegal search and seizure the police would not have connected them with the Pesce robbery and that the testimony of the victims is, therefore, the product of the illegal search and seizure.

█ At the outset this court is faced with a procedural question. Although the People originally raised the question at the hearing before the superior court, apparently both the People and petitioners now assume that Penal Code section 1538.5 affords the proper procedure by which to determine the admissibility of the Pesces' testimony. Section 1538.5, subdivision (a) provides in part: "A defendant may move . . . to suppress as evidence any tangible *or intangible* thing obtained as a result of" an illegal search or seizure. When testimonial evidence is obtained as a result of an illegal search it is "intangible" evidence within the meaning of this provision. (See *People* v. *Superior Court* (1969) 70 Cal.2d 123, 128 [74 Cal.Rptr. 294, 449 P.2d 230]; *People* v. *Coyle* (1969) 2 Cal.App.3d 60, 64 [83 Cal.Rptr. 924] (tape recording); *People* v. *Superior Court* (1970) 3 Cal.App.3d 476, 483 [83 Cal.Rptr. 771] (confession).) Accordingly, petitioners may properly seek to suppress the Pesces' testimony in this proceeding.

█ In the present case the illegally seized tangible evidence has been suppressed, but "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used in the way proposed." (*Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426]; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 485 [9 L.Ed.2d 441, 453, 83 S.Ct. 407].)

In determining when knowledge is deemed to be gained by the government's own wrong, the court in *Wong Sun* stated: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means suf-

ficiently distinguishable to be purged of the primary taint.' . . ." (371 U.S. at pp. 487-488 [9 L.Ed.2d at p. 455].)

■ In accord with the foregoing principles, this court has consistently held that the testimony of a witness who was discovered by the exploitation of illegal police conduct is not admissible. (*People* v. *Quicke* (1969) 71 Cal.2d 502, 521-522 [78 Cal.Rptr. 683, 455 P.2d 787]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 449-450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Schaumloffel* (1959) 53 Cal.2d 96, 100-103 [346 P.2d 393]; Accord, *Williams* v. *United States* (5th Cir. 1967) 382 F.2d 48; *United States* v. *Tane* (2d Cir. 1964) 329 F.2d 848, 853; *People* v. *Martin* (1942) 382 Ill. 192, 200 [46 N.E.2d 997, 1002]; *People v. Albea* (1954) 2 Ill.2d 317, 322 [118 N.E.2d 277, 41 A.L.R.2d 895]; *McLindon* v. *United States* (1964) 329 F.2d 238, 241 [117 App.D.C. 283]; Contra, *Smith* v. *United States* (1963) 324 F.2d 879, 881 [117 App.D.C. 1]; see also, Note (1955) 30 N.Y.U.L.Rev. 1121.) If, however, a witness becomes known to the police by means independent of the illegal conduct his testimony is admissible. (See *People* v. *Stoner* (1967) 65 Cal.2d 595, 602 [55 Cal.Rptr. 897, 422 P.2d 585]; *State* v. *O'Bremski* (1968) 70 Wn.2d 425, 428-430 [423 P.2d 530] (police knew existence and identity of witness and were in fact searching for her when they illegally entered the defendant's apartment and found her).) Moreover, even if the witness was discovered as a result of illegal police conduct, his testimony is admissible if he would have been discovered in the normal course of a lawfully conducted investigation. (*People* v. *Ditson* (1962) 57 Cal.2d 415, 443-444 [20 Cal.Rptr. 165, 369 P.2d 714]; *Wayne* v. *United States* (1963) 318 F.2d 205, 209 [115 App.D.C. 234]; *Somer* v. *United States* (2d Cir. 1943) 138 F.2d 790, 792; cf. *People* v. *Stoner, supra,* 65 Cal.2d 595, 602-603, fn. 3, see also R. Maguire, *How to Unpoison the Fruit, the Fourth Amendment and the Exclusionary Rule* (1964) 55 J. Crim. L., C. & P.S. 307, 314-317.)

■ In the present case, the Pesces became available as witnesses against petitioners as a result of the Pesces' and petitioners' connection with the illegally seized gun. Moreover, there is no evidence that without the lead supplied by the gun, the police investigation of petitioners would have led them to the robbery report or suggested to them that petitioners might be guilty of the Pesce robbery. Nevertheless, we do not believe that the police connection of petitioners to the Pesce robbery through the illegal discovery of the gun is sufficient to characterize the Pesces' testimony as "come at by exploitation of that illegality." (*Wong Sun* v. *United States, supra,* 371 U.S. 471, 488 [9 L.Ed.2d 441, 455].)

The Pesces were already known to the police as the victims of an

unsolved robbery. Their gun was found as the result of a search conducted pursuant to a search warrant which was subsequently determined to be legally insufficient and was made during the course of a police investigation of totally unrelated crimes. That search was not directed toward the discovery of witnesses such as the Pesces. (Cf. *People* v. *Schaumloffel, supra,* 53 Cal.2d 96, 100-103.) It did not result in the discovery of witnesses at its scene who would otherwise never have been known to the police. (Cf. *People* v. *Mickelson, supra,* 59 Cal.2d 448, 449-450.) It did not lead to the Pesces as the source of further evidence of the crimes the police were investigating. (Cf. *People* v. *Quicke, supra,* 71 Cal.2d 502, 521-522.) Instead, it was pure happenstance that during an investigation of other crimes, the police came across the gun taken in the Pesce robbery. The purpose of the exclusionary rule is to deter unlawful police conduct. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 651-653 [6 L.Ed.2d 1081, 1087-1088, 81 S.Ct. 1684]; *Linkletter* v. *Walker* (1965) 381 U.S. 618, 636 [14 L.Ed.2d 601, 612 [85 S.Ct. 1731]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 447-450 [282 P.2d 905, 50 A.L.R.2d 513].) In the present case, that purpose was adequately served by suppressing the gun and the evidence of the other crimes that the police were seeking. That purpose would not be further advanced by suppressing the testimony of the known victims of the Pesce robbery; testimony that unquestionably would have been admissible to establish petitioners' guilt of that crime, but for the chance disclosure of their connection therewith during a wholly unrelated police investigation.

The alternative writ heretofore issued is discharged. The petition for a peremptory writ of mandate is denied.

McComb, J., Mosk, J., and Burke, J., concurred.

**PETERS, J.**—I dissent.

The majority concede as they must that "the Pesces became available as witnesses against petitioners as a result of the Pesces' and petitioners' connection with the illegally seized gun. Moreover, there is no evidence that without the lead supplied by the gun, the police investigation of petitioners would have led them to the robbery report or suggested to them that petitioners might be guilty of the Pesce robbery." Thus the majority concede the direct, immediate, and necessary causal connection between the unlawful conduct and the testimony secured.[1]

---

[1]Because the causation is direct, immediate, and necessary, cases of independent lawful causation (see *People* v. *Stoner,* 65 Cal.2d 595, 602 [55 Cal.Rptr. 897, 422 P.2d 585]), where unlawful conduct was not necessary (*People* v. *Ditson,* 57 Cal.2d 415, 443-444 [20 Cal.Rptr. 165, 369 P.2d 714]), or where the causation has become

Notwithstanding the direct, immediate, and necessary causal connection between the unlawful police conduct and the testimony sought to be suppressed, the majority conclude that the testimony will be admissible. The majority rely upon the fact that the officers in conducting the unlawful search were not seeking evidence to connect petitioners with the Pesce robbery and claim that the purposes of the exclusionary rule are adequately served by suppression of the gun and would not be further advanced by suppression of the testimony. Neither of the matters relied upon by the majority furnish a valid basis for refusal to apply the exclusionary rule to the testimony sought to be suppressed.

The majority have forgotten the long and bitter lesson of history which led to the adoption of the exclusionary rule in order to protect rights guaranteed by the Fourth and Fourteenth Amendments. This court in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], and the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684], adopted the exclusionary rule only after a lengthy experience with the results of the admission of illegally obtained evidence and the fruits of such evidence. That experience had taught that there was no effective sanction to prevent overzealous law enforcement officials from engaging in unlawful searches and seizures in violation of the constitutional guarantees and that to permit admission of the evidence furnished an incentive for officials to violate the constitutional guarantees of all citizens. (See, e.g., *Mapp* v. *Ohio, supra,* 367 U.S. 643, 670 [6 L.Ed.2d 1081, 1098] [Douglas, J., concurring]; *People* v. *Cahan, supra,* 44 Cal.2d 434, 449.)

To make the constitutional guarantees meaningful the exclusionary rule was adopted. It was adopted not to vindicate the constitutional rights of lawbreakers, but to protect the constitutional rights of all citizens, especially the innocent, in the only way those rights could be effectively protected, by removing the incentive of officials to engage in unlawful searches and seizures. "By denying any profit from the unconstitutional methods of law enforcement, it is to be anticipated that law enforcement officials will have no incentive to engage in such methods." (*People* v. *Moore,* 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800].)

It was recognized that by the adoption of the exclusionary rule some criminals would go free because they could not be convicted without evidence obtained by violation of our constitutional guarantees. It was also

attenuated (*Wong Sun* v. *United States,* 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]), are not controlling.

recognized that other criminals might go free because, although the evidence necessary to convict might have been obtained by lawful means, it was not. (*People* v. *Cahan, supra,* 44 Cal.2d 434, 438, 449.) We pointed out, however, that when the constitutional provisions were adopted "the choice was made that all the people, guilty and innocent alike, should be secure from unreasonable police intrusions, even though some criminals should escape," and that "it would be manifestly impossible to protect the rights of the innocent if the police were permitted to justify unreasonable searches and seizures on the ground that they assumed their victims were criminals." (*People* v. *Cahan, supra,* 44 Cal.2d 434, 438-439.) We adopted the rule excluding evidence secured by unlawful searches and seizures "because other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers. . . ." (*Id.,* at p. 445.)

Once we restore *any* profit to the unlawful search or seizure, as the majority do today, we furnish an incentive for law enforcement officials to engage in unconstitutional methods of law enforcement, and the danger of the use of such methods extends to the citizenry generally, including the innocent. In order for the exclusionary rule to be effective in deterring unconstitutional searches and seizures, it is not enough to remove *some* of the profit of such searches and seizures; *all* of the profit must be removed, for law enforcement officials, faced with a situation which permits any gain from the unlawful conduct, however remote, are furnished an incentive to violate the constitutional guarantees. It is for these reasons that we must exclude not only the evidence unlawfully seized but also the "fruits" of such evidence. (*Wong Sun* v. *United States, supra,* 371 U.S. 471, 484-487 [9 L.Ed.2d 441, 452-455].)

In other words, no compromise can be permitted in the enforcement of the exclusionary rule where the compromise will permit profit from the unlawful conduct, and denying part of the profit, but not all, will frustrate the entire purpose of the exclusionary rule. For these reasons, I cannot agree with majority conclusions that the purpose of the exclusionary rule to deter unlawful police conduct is adequately served by suppressing the gun and that the suppression of the testimony would not further advance the purpose of the exclusionary rule. In my view, unless we suppress all of the evidence obtained as a direct, immediate, and necessary result of the unlawful police conduct, we furnish an incentive to violate the constitutional guarantees, and suppression of the gun alone without suppression also of the evidence obtained as a direct, immediate and necessary result of the unlawful seizure of the gun, does not adequately serve the purpose of the exclusionary rule but defeats it.

Nor can I agree that the fact that the police were not searching for the gun or other evidence relating to the Pesce robbery should somehow render the evidence admissible. The general search has long been condemned. (*Aday* v. *Superior Court,* 55 Cal.2d 789, 796 [13 Cal.Rptr. 415, 362 P.2d 47]; *People* v. *Berger,* 44 Cal.2d 459, 461 [282 P.2d 509]; *People* v. *Mayen,* 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383]; *Entick* v. *Carrington* (1765) 19 Howell's State Trials 1029.) Where a search is made pursuant to a warrant which is lawful in part but unlawful for overbreadth in other parts, seizure of property pursuant to the lawful part of the warrant is lawful, but the property seized pursuant to the overly broad part must be suppressed. (*Aday* v. *Superior Court, supra,* 55 Cal.2d 789, 796-797.) The majority today tell us that where the search is in all respects *invalid* the fruits of the search as to matters sought will be suppressed but the fruits of matters not specifically sought will be admissible. In other words the wrongful act of the officer of unlawfully searching when coupled with the further wrongful search for matters for which there is no reason whatsoever to search somehow permits use of the fruits of the wrongful conduct. There is more than a bit of truth in the ancient saying that two wrongs do not make a right, and common sense dictates that the prosecution should not be in better position because the officer unlawfully entered and then engaged in a general search and seizure than it would be if the officer had unlawfully entered and engaged in a specific search. Moreover, and perhaps more importantly, the majority's position in granting significance to the fact that the officers were not searching for the gun can only have the effect of providing an incentive for law enforcement officials, particularly members of the robbery detail, who entered unlawfully or have failed to find the evidence or contraband sought, to expand their search in the hope of finding evidence to connect the victim of the search with some other offense. Providing such incentive is contrary to the policy against general searches and subverts the purpose of the exclusionary rule to deter unlawful searches and seizures.

Finally, I must call attention to the fact that the decision of the majority today relates not so much to searches where law enforcement officials have probable cause to believe the victim of the search guilty of crime but to searches where there is no such probable cause. Where there is probable cause, law enforcement officials will often be deterred from unlawful conduct from a fear of jeopardizing their right to obtain evidence which could be lawfully seized. No such fear ordinarily prevents an officer from searching when there is no probable cause but only rumor or speculation and he knows that the evidence, if it exists, may not be lawfully seized. It is the latter type search, the search of the presumed innocent, which the

courts should most zealously discourage, but the impact of today's decision of the majority is to provide an incentive for the speculative and general search.

I would issue mandate.

Tobriner, J., and Sullivan, J., concurred.

Petitioners' application for a rehearing was denied October 28, 1970. Peters, J., Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.