[Crim. No. 35636. Second Dist., Div. Two. July 9, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DAL HAYBRON et al., Defendants and Appellants.

**COUNSEL**

Joseph F. Walsh and Joseph Shemaria for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Carla M. Singer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendants were charged in count I in an information with sale of marijuana (Health & Saf. Code, § 11360, subd. (a)) and in count II with possession of concentrated cannabis, commonly referred to as "hash," (Health & Saf. Code, § 11357, subd. (a)). They moved to set aside the information pursuant to Penal Code section 995. That motion was denied. Pursuant to a plea bargain, they then pleaded guilty to count II, and count I was dismissed. Pursuant to Penal Code section 1538.5, subdivision (m), defendants appeal from the judgments contending that certain evidence against them should have been suppressed. We affirm.

█ Defendants did not seek a hearing in the superior court under Penal Code section 1538.5, subdivision (i), but elected to raise the suppression issue under Penal Code section 995, by contending that *all of the evidence* presented to the magistrate was incompetent in that it was the product of an unreasonable search and seizure and hence the transcript of the preliminary hearing contained no competent evidence to provide a basis for the magistrate's determination in holding them to

answer. Our review of the case is thus based on the evidence contained in the transcript of the preliminary hearing.

According to the rule governing appellate review, we view that evidence in the light most favorable to upholding the magistrate's decision (*People* v. *Martin* (1972) 23 Cal.App.3d 444 [100 Cal.Rptr. 272]) and if there is any competent evidence in the transcript which would justify the magistrate's entertaining a reasonable belief that defendants had committed a felony, the motion to set aside was properly denied, notwithstanding the fact that some incompetent evidence may have been received by the magistrate. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706].) This is the same test which the superior court was required to apply in initially ruling on the motion.

■ While the denial of a motion to dismiss under Penal Code section 995 may be reviewed on an appeal from a judgment of conviction entered after a trial, such a denial is not generally reviewable on appeal after a plea of guilty. (*People* v. *Meals* (1975) 49 Cal.App.3d 702 [122 Cal.Rptr. 585].) Penal Code section 1538.5, subdivision (m), however, permits review of the validity of a search and seizure on appeal from a conviction predicated on a plea of guilty "providing that at some stage of the proceedings prior to conviction [defendant] has moved for the return of property or the suppression of the evidence." It has been held that a motion under Penal Code section 995 satisfies this latter requirement. (*People* v. *Lilienthal, supra.*)

In *Lilienthal, supra*, the court emphasized that "at some stage of the proceedings" referred to proceedings in the superior court when at page 896, it stated "[I]t would be wholly inappropriate to reverse a superior court's judgment for error *it* did not commit and that was never called to *its* attention." (Italics added.)

While the issue of suppression may thus be preserved for appeal by moving to set aside the information or indictment under Penal Code section 995, it is as we will discuss, *infra*, clearly not the most satisfactory manner in which to proceed.

Given the test to be applied to a ruling under Penal Code section 995, as we have outlined, *supra*, the superior court, in ruling on such a motion, is not in a position to make selective rulings as to the admissibility of the various items of evidence that were offered at the preliminary hearing. The superior court can only grant or deny the motion.

This difficulty was perceived by the *Lilienthal* court when it held at page 897: "In short, a section 995 motion will be effective to preserve the Fourth Amendment issue on an appeal following a guilty plea *only* when it appears from the transcript of the preliminary hearing that *essential* evidence was illegally obtained." (Italics added.)

We interpret that language to mean evidence *essential* to the magistrate's decision in holding a defendant to answer, and not evidence which might be viewed as *essential* to a later conviction. To hold otherwise would require a reviewing court to engage in intolerable speculation.

In the absence of a trial record or a record of a de novo suppression hearing in the superior court in which the superior court has ruled on specific and individual items of evidence, it is impossible for an appellate court to assess the application of the harmless error rule as discussed in *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], and *People* v. *Salazar* (1979) 93 Cal.App.3d 912 [156 Cal.Rptr. 125].

When, as here, we are asked to review a conviction based on a plea of guilty entered after the denial of a motion under Penal Code section 995, the issue is simply whether the motion was properly denied. Thus we turn to the evidence presented to the magistrate at the preliminary hearing.

One Patrick White testified that on the evening of September 27, 1977, he telephoned a friend of his named Rusty Hammond[1] whom he knew to be a seller of marijuana. White arranged to purchase a "bale" of marijuana for $425 a pound, or a total of $17,000 for the "bale."

The two met later that evening at a bowling alley. White gave Hammond $1,000 as partial payment and was told by the latter that the marijuana would be delivered later that same night.

Defendants Barker and Haybron were at the bowling alley at the time. Barker was known to White as an associate of Hammond.

---

[1]Hammond was jointly charged with the defendants and, although not a party to the appeal, was a defendant at the preliminary hearing conducted jointly as to all three.

The four individuals played pool for about an hour and then Hammond instructed White to follow him in his car. Hammond got into a car belonging to Haybron and Barker. White followed him to a location on a "side street," where Hammond delivered the "bale" to White from the trunk of the defendants' car.

White took the "bale," weighing 52 pounds, to his home and placed it in a closet. He noticed that the "bale" was "wet." He called Hammond on the phone and told him that he did not want the marijuana. Hammond responded that he would either come over or send someone over to check it out.

About a half hour later, Barker called White on the telephone and White complained to him about the marijuana being "wet." Barker stated that he would come over and check it out.

After the lapse of another 30 to 45 minutes, defendants Barker and Haybron drove up to White's house in the same vehicle that had been used by Hammond. The two entered the house. The marijuana was spread out on the floor and examined. Other persons were on the premises at the time.

When White complained of the quality and price, defendants agreed to lower the price. One of the defendants was carrying a briefcase from which he produced a block of "hash," broke off a piece, and gave it to White. Defendants then left.

Shortly thereafter, White apparently received a phone call telling him that there were police in the area. He returned to where the marijuana was located on the floor of a bedroom. He scraped up as much of the marijuana as he could into a plastic bag and left the house where he was confronted by a police officer. He dropped the bag and it was seized by the officer. The officer also recovered the piece of "hash" which defendants had given to White. About 40 pounds of marijuana which remained in the house was, with White's permission, also retrieved by the officer.

White was taken to the police station and he agreed to cooperate with the officers in the apprehension and prosecution of Hammond, Barker and Haybron.

White made a phone call from the station to Hammond's home. An officer monitored the phone call. In that conversation Hammond discussed the sale of the "bale" of marijuana. White then agreed to make a written statement and also to make a statement before a judge.

On the basis of White's statement to the judge and an affidavit by a police officer concerning his, the officer's, observations including his overhearing of the monitored phone conversation, a search warrant was issued for Hammond's residence. Execution of that warrant produced additional "hash" and marijuana.

Officer Velasco of the San Fernando Police Department, testified that on the morning of September 28, 1977, he received a phone call from an anonymous informant who told him that at that moment there were 50 pounds of marijuana located at the White residence. The informant stated that White's "connection" was on the premises in the person of two men from Ohio. These men were driving a green Chevrolet with an Ohio license plate. According to the informant, time was of the essence since the "connection" was about to depart.

Officer Velasco immediately determined from the police computer that there were a number of outstanding traffic warrants for White's arrest. He notified an Officer Applegarth of the Los Angeles Police Department concerning the information that he had received. Officer Velasco proceeded to White's residence where he was met by Officer Applegarth. The two officers saw the Chevrolet with the Ohio plates parked at the White residence. They observed the two defendants exit the house with Haybron carrying a briefcase which he placed in the trunk of the car. The two defendants drove off.

Officers Velasco and Applegarth approached the White residence and knocked on the door. From the inside they heard the sound of people running and hollering "Let's get out. The cops are here. Get rid of the stuff."

Officer Velasco went around to the rear of the house when he observed White exiting with a green plastic trash bag in his hand. When White saw Officer Velasco he dropped the bag. The officer could observe marijuana in the bag.

The officer, looking through a window, saw inside the house another bag and a newspaper spread on the floor. A quantity of marijuana was

spread out on the newspaper. A person was observed running through the house. The officers entered the house with White's consent, and after retrieving the additional contraband, radioed to another police unit in the vicinity to detain defendants in the Chevrolet and return them to the White residence.

An Officer Knight stopped defendants for a traffic violation a short distance from the location and in response to the radio broadcast returned the car and defendants to the White residence. Officer Velasco approached the car and detected a strong odor of marijuana emanating from the passenger compartment and the trunk.

The trunk was opened and two briefcases were observed therein. The briefcases contained a quantity of "hash" and $32,000 in currency.

■ At the close of the preliminary hearing, defendants objected to the introduction into evidence of all of the various items mentioned. They also objected to the testimony of White on the basis that White's arrest was illegal in that his testimony was an exploitation of police misconduct. On appeal, however, defendants focus only on the testimony of White and the contents of the briefcases.

The arrest of Patrick White was clearly proper. The information from the informant was well substantiated by the fact that (1) the officers saw the car described by the informant at the White residence, (2) two individuals as described by the informant came out of the house, (3) when the officers knocked on the door they heard the commotion and statements described above, and (4) White exited the house carrying a bag of marijuana which he dropped upon seeing the officers. The cumulative facts were sufficient to justify the officers' belief that the informant had provided accurate information and that there existed probable cause to arrest not only White but the two defendants as well.

Since White's testimony was untainted by any antecedent police misconduct, it was completely competent. A fortiori the search warrant for Hammond's house was validly issued.

White's testimony, as corroborated by the officers' observations of defendants leaving the house with a briefcase, coupled with the "hash" and marijuana found at Hammond's house, was more than sufficient evidence to hold defendants to answer and was more than an adequate

basis for denying the motion under Penal Code section 995 as to both counts.

That evidence strongly points to the conclusion that Hammond and the two defendants were engaged in a conspiracy to possess and sell "hash" and marijuana. Hence each was chargeable with the substantive offenses involved in possessing the "hash" and marijuana found in Hammond's house. White's testimony of course established each defendant's connection with the sale to him of the marijuana and "hash" found at his home.

■ The briefcases were validly seized because the officers had prob-able cause to believe they contained contraband. (*Arkansas v. Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586].)

Further in view of White's testimony concerning the involvement of a briefcase in the transaction in the house and the officers' observations of defendant Haybron carrying a briefcase, the briefcases themselves were relevant and admissible without regard to their contents.

The evidence of the contents of the briefcases was not *essential* to the magistrate's decision to hold defendants to answer, hence we need not discuss whether the contents should have been suppressed simply because the officers had looked inside of them prior to the time that they were offered in evidence at the preliminary hearing.[2]

---

[2]In *Arkansas v. Sanders, supra,* it was held that while police may seize containers suspected to contain contraband, they may not, without a warrant or judicial approval, examine the contents of containers of a type commonly used for personal effects and in which there would be a reasonable expectation of privacy.

Assuming that the briefcases here fit that description. The police of course had the right to retain custody until they were presented to the magistrate as exhibits. The magistrate could have satisfied the requirement of the warrant or judicial authorization by simply ordering the briefcases to be opened in court after hearing the testimony concerning their seizure. As we have noted, the briefcases themselves were relevant admissible evidence.

The fact that the officers had previously looked inside the briefcase would not appear to us to invalidate the subsequent court-ordered "search" since the antecedent error by the police was unrelated to the facts giving rise to the probable cause and was thus completely attenuated. (Cf. *People* v. *Boyles* (1955) 45 Cal.2d 652 [290 P.2d 535]; *People* v. *Baker* (1970) 12 Cal.App.3d 826 [96 Cal.Rptr. 760]; *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683].) Since either the police or the court have since the time of the seizure of the briefcases had the right to retain them in their custody, it would appear to us to be no bar to obtaining court authority to open them even at this late date.

The Penal Code section 995 motion was properly denied on the basis that there was other sufficient competent evidence presented to the magistrate to justify holding defendants to answer.

The judgments are affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 4, 1980.