364 A.2d 381

**COMMONWEALTH of Pennsylvania**

v.

**Frank J. CRUTCHLEY, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

Joel Harvey Slomsky, Philadelphia, (Court Appointed), for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from the judgments of sentence imposed on the appellant, Frank J. Crutchley, following his conviction of the crimes of robbery [1] and criminal conspiracy.[2] The sole argument raised on appeal is that the identification testimony presented by the Commonwealth was improperly introduced into evidence at trial. We find no merit to appellant's contention, and therefore, affirm.

The events giving rise to this appeal are as follows: On August 19, 1974, about 2:00 A.M., two men held up Charles Mastronardo, the owner of the "Seven-Eleven" food store at 1801 Glendale Avenue in Philadelphia, and escaped with approximately $400, some groceries, and Mr. Mastronardo's wallet which contained credit cards. Mr. Mastronardo had an opportunity to observe the robbers during this incident in his store, and gave a detailed description of both men to the police.

On August 27, 1974, Officer Daniel Judge obtained a warrant to search for narcotics in an apartment leased by appellant. This search warrant, however, was issued without probable cause.[3] While appellant was not present at the time the officers entered his apartment, two other individuals were arrested there and taken to the police station, and several items, including some credit cards in the name of Charles Mastronardo, were uncovered. These credit cards were given to Detective James McKee, who,

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3701 (1973).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 903 (1973).

3. The Commonwealth neither agrees with nor contests the lower court's ruling on this point.

having been involved in the investigation of the August 19, 1974 "Seven-Eleven" robbery, recognized the name on them as that of the victim. Detective McKee then realized that one of the men arrested as the result of the narcotics search matched the description given by Mr. Mastronardo of one of the robbers. Having previously known appellant, Detective McKee also concluded that the description of the other man fit appellant. Mr. Mastronardo was called to the police station where he identified codefendant Howard Smith and appellant from a photographic array [4] as the men who had robbed him.

Appellant was arrested as a suspect in an unrelated crime, and while he was in custody, it was discovered that appellant was wanted in connection with the "Seven-Eleven" robbery. The trial judge suppressed the use of the credit cards for trial purposes, but declined to exclude the identification of appellant by Mr. Mastronardo. This appeal followed the lower court's denial of appellant's post-trial motions and its imposition of sentence.

■ Appellant contends that the identification evidence stemmed directly and immediately from the illegal search and was impermissibly tainted by it. In *Wong-Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), the United States Supreme Court set forth the following test, applicable to the states, for determining whether evidence obtained after an illegal search is to be excluded:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means suffi-

**4.** Appellant has not challenged the photographic identification on the ground of undue suggestivity.

ciently distinguishable to be purged of the primary taint.' " (Citation omitted.)

The court indicated that such evidence is admissible when "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' " *Id.* at 487, 83 S.Ct. at 417 (citation omitted).

[■■ Our Supreme Court, in accordance with the foregoing principle, has held that the testimony of a witness whose existence is come upon solely as the result of an illegal search is not admissible. *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972). Identification evidence, however, will not be suppressed merely because it has derived from an illegal arrest. *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972); *Stoutzenberger Appeal,* 235 Pa.Super. 500, 344 A.2d 668 (1975); *Commonwealth v. Davy,* 227 Pa.Super. 455, 323 A.2d 148, *allocatur refused,* 227 Pa.Super. *xxvi* (1974). In *Commonwealth v. Garvin,* supra, the appellant was arrested without probable cause and taken to the scene of the crime where he was identified by one of the victims. He was identified by both victims at trial. The court held that the identification evidence was not the fruit of an illegal arrest since it could not be assumed "that but for the illegal arrest the appellant would have remained at large indefinitely." *Id.* at 266, 293 A.2d at 38 (footnote omitted). The identification evidence could not be said to have derived from the exploitation of any illegality because "the only effect of the illegal arrest was to hasten the inevitable confrontation [between the robbery victims and appellant] and not to influence its outcome." *Id.* at 264, 293 A.2d at 37. "[T]he illegality contributed neither to the knowledge of the witnesses nor to the accuracy of their identifications." *Id.* at 266, 293 A.2d at 38.

■ It is clear from the record in the case before us that the victim had a sufficient opportunity during the

commission of the crime to observe appellant. The robbery took place over a period of five or six minutes. Mr. Mastronardo had a clear and unobstructed view of both robbers in a well-lighted store. He gave a detailed description of the robbers to the police at the scene of the crime, and less than two weeks elapsed between the robbery and the photographic identification. We are satisfied that Mr. Mastronardo's identification was based on his personal observation of appellant at the scene of the robbery. Here, clearly, the evidence did not derive from the "exploitation" of any illegality, but instead from a source wholly independent of the illegal search.

We are impressed with *Lockridge v. Superior Court of Los Angeles County*, 3 Cal.3d 166, 89 Cal.Rptr. 731, 474 P.2d 683 (1970), *cert. denied*, 402 U.S. 910, 91 S.Ct. 1387, 28 L.Ed.2d 652 (1971), a case nearly on point with the case at bar. In that case, robbery victims became available as witnesses against the defendants as the result of the victims' and defendants' connection with a gun seized pursuant to an illegal search and seizure during the course of a police investigation of totally unrelated crimes. As in the case before us, the search had not been directed toward the discovery of witnesses, and "[i]t did not result in the discovery of witnesses at its scene who would otherwise never have been known to the police." *Id.* at 734, 474 P.2d at 686. "[I]t was pure happenstance that during an investigation of other crimes, the police came across the gun . . . ." *Id.* The court held that the purpose of the exclusionary rule was "adequately served by suppressing the gun and the evidence of the other crimes that the police were seeking." *Id.* The rule did not require that identification testimony be likewise suppressed.

Appellant finds support in *Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974), wherein the court held that the identification of stolen property by the owner should have been suppressed as the fruit of an illegal ar-

rest. "Had the illegal arrest not occurred, the identification of the property may never have been possible." *Id.* at 376–77, 320 A.2d at 844. We believe, however, that appellant's reliance is misplaced. *Commonwealth v. Mackie,* supra clearly presented a situation where "the questioned evidence derived so immediately from the unauthorized arrest that its relationship to the illegality was readily apparent." *Commonwealth v. Garvin,* supra at 265, 293 A.2d at 37. The illegal police action in the case at bar occurred during the investigation of a crime totally unrelated to the crime for which the identification was necessary. It was "pure happenstance" that the police uncovered the credit cards during the illegal search of appellant's apartment for narcotics. The trial judge suppressed the direct product of the illegal search, *i. e.,* the credit cards. In *Commonwealth v. Mackie,* supra, the illegally seized property was introduced against the defendant at trial. While the illegally seized credit cards led to the connection of appellant with the "Seven-Eleven" robbery, we find that the identification evidence presented by the Commonwealth at trial was so independent of the seizure as to be untainted by any illegality and therefore not within the "fruit of the poisonous tree" prohibition.

Judgment affirmed.