558 P.2d 701

STATE of Arizona, Appellee,

v.

Mark Steven PRICE, Appellant.

Nos. 1 CA–CR 1253, 1 CA–CR 1254.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 5, 1976.

Supplemental Opinion on Denial of
Rehearing Dec. 9, 1976.

Denied Jan. 11, 1977.

Bruce E. Rabbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, Raineri, Jason & Schatz, by David K. Schatz, Scottsdale, for appellant.

JACOBSON, Judge.

The appellant, Mark Steven Price, was convicted of two counts of armed robbery; both counts were submitted to the court based upon the preliminary hearings transcripts following appellant's written waiver of a jury trial. Price was sentenced to a term of not less than five years nor more than ten years in the Arizona State Prison on each conviction, both terms running concurrently. He appeals from both the judgments and sentences imposed.

On November 18, 1974, the Tempe police were preparing to execute a warrant for the search of an apartment residence for narcotic substances. At the same time as the information which led to the issuance of the warrant was received, the police were informed about the possibility of a stolen vehicle located at this apartment address and used by one of the residents of the apartment for which the warrant had been obtained. Upon investigation of the area the officers located the subject vehicle, confirmed that this vehicle was indeed a stolen vehicle and continued their preparation for the issuance and execution of the narcotics search warrant. Upon their later return to this area for the execution of the warrant, these officers were informed that the stolen vehicle had just been involved in a hit-and-run accident. Dennis Savage then entered the parking lot area driving this vehicle and as he exited the vehicle he was placed under arrest. He was left in the custody of a uniformed officer, while the other officers at the apartment complex executed the narcotics search warrant on Savage's apartment. During the execution of that warrant, appellant Price, along with several others, was arrested. At approximately 8:30 p.m., appellant was booked into the Tempe jail on a charge of possession of marijuana.

During questioning the following morning, Savage admitted to the theft of the vehicle in which he had arrived at the apartment and to being involved in the hit-and-run accident. In addition, he was being questioned regarding another stolen vehicle, a 1973 Monte Carlo, that had been recovered in close proximity to his apartment. At a point in the questioning of Savage, the interviewing officer was called from the room to take a telephone call. While returning to the questioning room the officer became aware of a checkbook which had been recovered from Savage's apartment on the previous evening. This checkbook belonged to the owner of the 1973 Monte Carlo.

The officer, at some point upon re-entering the interrogation room, indicated that he had "additional information" on the Monte Carlo and that he was sure that Savage had stolen the car. Savage later confessed to the theft of this motor vehicle. Since this vehicle was connected with a robbery in Mesa, Savage was transferred to the Mesa police for questioning. Upon being confronted in Mesa with the fact that the Monte Carlo was connected with the robbery of a gas station, Savage confessed to this robbery and implicated appellant Price in the robberies of a liquor store and a fast-food establishment.

At some point following the confession and implications made by Savage, appellant Price was transferred from the Tempe jail to the Mesa jail where he was interviewed and confessed to his involvement in the robberies. Appellant's interview leading to his confession was begun at approximately 6:55 p.m. and concluded at approximately 8:15 p.m. on November 19, 1974.

The County Attorney admitted, and the trial judge ruled, that the search warrant executed on November 18, 1974, which revealed the checkbook belonging to the owner of the stolen vehicle was technically invalid. During the submission of these cases upon the transcripts of the preliminary hearings, the appellant's confession was withdrawn and the crux of the state's case was the testimony and in-court identification by the victims.

Appellant's first arrest at the apartment complex for possession of marijuana was conceded by the prosecutor to be an invalid arrest, due to a deficient search warrant. Appellant's subsequent arrest by the Mesa police followed the statements by his roommate, Dennis Savage, which implicated him in two armed robberies. On appeal, appellant argues the following:

1. Appellant's detention by the Tempe police was the result of an illegal arrest and thus the photographs obtained during the detention cannot be used in a photographic line-up since they are either the product of an illegal arrest or the fruit of the poisonous tree.

2. Savage's confession was illegally obtained by use of the "check-book evidence", and therefore appellant's confession obtained as a result of statements of Savage which implicated appellant in the robberies, is likewise the fruit of a poisonous tree or the product of an illegal arrest.

3. The State failed, as per Rule 16.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S., to meet its burden of proof that the alleged illegal and tainted evidence was admissible.

4. Submission on the transcripts was not voluntarily and intelligently made when the defendant was not advised of the possible consequence of serving not less than three years before becoming eligible for parole.

5. Submission on the transcripts was not voluntarily and intelligently made when the defendant was led, by the court's consideration of a pre-sentencing memorandum on the availability of probation, to believe probation was available, even though the court had previously advised him that probation was not available.

6. The finding of the court of guilty of "armed robbery" while the information charged "robbery either by gun or deadly weapon" entitled the first offender defendant to consideration for probation.

■ Turning to appellant's first contention, it is unclear from the record where the photograph complained of was taken—Tempe or Mesa. In any event, in the absence of a warrant, an arrest must be supported by probable cause, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *State v. Richards,* 110 Ariz. 290, 291–292, 518 P.2d 113, 114–115 (1974), the Supreme Court of Arizona noted as follows:

> "Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it." *State v. Williams,* 104 Ariz. 319, 452 P.2d 112 (1969); *Ker v. State of California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *State v. Pederson,* 102 Ariz. 60, 424 P.2d 810 (1967); *State v. Vaughn,* 104 Ariz. 240, 450 P.2d 698 (1969).

In light of the knowledge by the police that Dennis Savage had just confessed to two motor vehicle thefts and two armed robberies; that appellant was implicated in the armed robberies of the liquor and food establishments and that appellant Price and Dennis Savage had resided together we are unable to declare that Savage's statements did not provide sufficient probable cause for the second arrest of the appellant in Mesa. Therefore, if the photographs were obtained during the detention in Mesa, they were not the product of an illegal arrest since the warrantless arrest was properly predicated on a showing of probable cause. Assuming that the Tempe arrest was illegal and further assuming that the photograph was taken in Tempe as a result of that arrest, nevertheless, such a photograph may be used in further investigation of the Mesa robberies. It should be emphasized at this point that the photograph itself was suppressed and the defendant's contention goes only to the issue of the subsequent witness identification who viewed this photograph.

Likewise, no contention is raised as to this witness' reliability.

The purpose of the exclusionary rule has been characterized by the Supreme Court of the United States as follows:

> "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960). *See also, Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Furthermore, in *Wong Sun, supra,* the Supreme Court stated:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" (citation omitted) 371 U.S. at 487–488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

■ In the instant case, as in *People v. McInnis,* 6 Cal.3d 821, 100 Cal.Rptr. 618, 494 P.2d 690 (1972), any link that was forged from the photograph, taken subsequent to the first arrest, with the robberies charged, was tenuous, at best. The Supreme Court of California in *McInnis, supra,* discussed the police identification photo, the exclusionary rule and its consequences, recognized the dilemma and resolved it as follows:

> "To hold that all such pictures resulting from illegal arrests are inadmissible forever because they are 'fruits of the poisonous tree' would not merely permit the criminal 'to go free because the constable has blundered' (Cardozo, J., in *People v. Defore* (1926) 242 N.Y. 13, 21, 150 N.E. 585, 587) but would allow the criminal immunity, because another constable in another jurisdiction in another case had

blundered. It would in effect be giving a crime insurance policy in perpetuity to all persons once illegally arrested; if the photograph of a person obtained because of such an arrest becomes instrumental in the identification of that person for a crime committed many years later, it could be urged that *but for* the old illegal arrest the criminal would not have been identified. Rationally, however, a 'but for' relationship alone is insufficient to render the photograph inadmissible since it cannot be said that many years later the illegality of the earlier arrest was being 'exploited'." 100 Cal.Rptr. at 621, 494 P.2d at 693.

In the present case, the time span between the photograph and its use in identification was one of not years but days, nevertheless, the principle remains the same, particularly since there is no evidence that collusion existed between the Tempe and Mesa police departments to obtain an illegal photograph.

We reject the appellant's contention that despite suppression of the photographs themselves, the taint of the photographs extends derivatively to the in-court identification. Under the logic of both the *McInnis* court, *supra,* and the policy of the exclusionary rule as noted above, the radiations of the exclusionary rule do not emanate that far. We fail to see how the purpose of deterring unlawful police conduct would be furthered by suppressing the testimony of known victims of the armed robberies.

Appellant next contends that his confession was illegally obtained as the fruit of the poisonous tree. We do not need to reach this contention as the confession was withdrawn by the prosecution prior to submission of the matter to the court for consideration.

What has been previously stated also disposes of appellant's contention that the State failed to sustain its burden of proof according to Rule 16.2(b), Ariz. Rules of Criminal Procedure, 17 A.R.S., as to the allegedly illegal and tainted evidence discussed above.

The appellant next maintains that the submission on the basis of the transcript was not voluntarily and intelligently made when the appellant was not advised of the special parole requirements of A.R.S. § 13–643, as amended, (Supp.1975).

■ Our own Supreme Court has enunciated the obligation of the trial court in assessing the submission on the hearing transcripts as follows:

"Due process requires that the trial court make a record similar to that required by *Boykin v. Alabama,* supra, [395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] to determine if the decision to submit the case on the preliminary hearing transcript was freely, intelligently, and voluntarily made.

"The trial court must determine, and the record must reflect, that the defendant understood the significance and consequences of submitting the case on the basis of the preliminary hearing transcript. It must affirmatively appear in the record that the defendant knew that he was giving up the right to trial by jury, to testify in his own behalf, to call any witnesses, or to offer any further evidence. The record must reflect that the defendant understood that the whole issue of his guilt or innocence of the offense charged was to be made upon preliminary hearing transcript." *State v. Crowley,* 111 Ariz. 308, 311, 528 P.2d 834, 837 (1974).

The record clearly indicates that appellant had an understanding of all the rights he waived by allowing the matter to be submitted on the preliminary hearings transcripts and a knowledge that he was waiving such rights, including advising as to the range of sentencing. In this regard, the defendant was advised:

"Mr. Price, one thing: When we discussed penalty, I advised you what the penalty ranges were.

"Do you recall that?

"THE DEFENDANT: Yes, sir.

"THE COURT: And I believe your attorney has probably indicated to you that

there is some confusion by reason of a recent statute passed by our State Legislature as to whether robbery with a gun carries a *mandatory* minimum of five years. In other words, you have no possibility of probation.

"Has your attorney discussed that with you?

"THE DEFENDANT: Yes.

"THE COURT: Has he also told you that I am of the opinion that I do not have the right to give you the probation if you are found guilty?

"THE DEFENDANT: Yes.

"THE COURT: You were aware of that before we started the hearing earlier?

"THE DEFENDANT: Yes, I was.

"THE COURT: Would that have changed any of the answers had I told you that earlier that you gave me as to whether or not you wish to submit this matter?

"THE DEFENDANT: No, sir."

(emphasis added)

Similarly, appellant asserts that his decision to submit on the preliminary hearings transcripts was not voluntarily made since the appellant reasonably believed that he could have been granted probation. Appellant maintains that this belief was the product of the court's consideration of the appellant's pre-sentencing memorandum discussing probation availability and appellant's counsel's argument for probation during the mitigation hearing. However, the record is manifestly clear that the court advised the appellant of the possible range of sentence and advised appellant that probation could not be granted. We conclude, after our review of the entire record and, in particular, our assessment of the colloquy between appellant and the trial court, that the record does not provide either objective support for his assertion of a mistaken subjective impression on probation availability or any objective proof to reasonably justify such a belief. Accordingly, we hold that his submission on the basis of the preliminary hearings transcripts was voluntarily made.

■ The appellant also contends that this colloquy did not adequately advise him that he would not be eligible for parole for five years. Appellant relies on our Supreme Court decision in *State v. Rios,* 113 Ariz. 30, 545 P.2d 954 (1976), relating to guilty pleas. However, appellant was convicted prior to that decision and in *State v. Stenrud,* 113 Ariz. 327, 553 P.2d 1201 (filed August 6, 1976), the Supreme Court held that *Rios* would have only prospective application. Accordingly, *Rios* provides no basis for overturning appellant's conviction.

■ The appellant next urges that the finding of the court of guilty of "armed robbery" while the information charged "robbery either by gun or deadly weapon" entitled the first offender defendant to consideration for probation. For a defendant to be sentenced under A.R.S. § 13–643(B), providing for special punishment where a gun is used in the commission of the robbery offense, it is not necessary that the court make a finding that a gun was used. *See, State v. Felix,* 107 Ariz. 211, 484 P.2d 631 (1971). All that is necessary is that the evidence presented clearly indicates that the offense was committed by the use of a gun. The preliminary hearings transcripts contained the testimony of the victims of both the liquor store and the fast-food establishment robberies. The individual and collective testimony clearly indicated a gun was used in the commission of each offense. Accordingly, the appellant's final contention is without merit.

Judgment and sentence affirmed.

SCHROEDER, P. J., and WREN, J., concurring.

## SUPPLEMENTAL OPINION

Mark Steven Price was convicted of two counts of armed robbery; both counts were submitted to the court based upon the preliminary hearings transcripts following his written waiver of a jury trial. Price was sentenced to a term of not less than five years nor more than ten years in the Arizona State Prison on each conviction, both

terms running concurrently. He appealed from both the judgments and sentences imposed and this court affirmed the decision of the trial court in *State v. Mark Steven Price* (1 CA-CR 1253 and 1 CA-CR 1254 (consolidated), filed October 5, 1976). On motion for rehearing, the defendant presents an issue which we feel warrants more elaboration than the discussion which was presented in our first opinion. Therefore, we accord this issue full development in this supplemental opinion.

The defendant was charged by information in both CR-84703 and CR-84704, Maricopa County Superior Court, with robbery "while armed with a gun or deadly weapon." At the conclusion of the submission hearing, the court found the defendant "guilty as charged in the charge of armed robbery, CR-84704; and guilty as charged in the charge of armed robbery in CR-84703." The record of the preliminary hearing clearly indicated that a gun was used in the commission of each offense.

■ The commission of the crime of robbery as proscribed by A.R.S. § 13–643(A) by an individual armed with a gun or deadly weapon carries the punishment as provided for in A.R.S. § 13–643(B). However, if a gun was used, for the first offender, the term of imprisonment is not less than five years with a statutory preclusion of eligibility for either suspension, commutation of sentence, probation, pardon or parole until the individual has served minimal sentence imposed. On his motion for rehearing, the defendant contends that when special consequences depend upon the character of the weapon used, there must be a specific finding as to the weapon employed, in order to support a denial of the less serious punishment. Since the trial court's finding lacked specificity as to the nature of the instrument used in the commission of the offense, the defendant urges that sentencing should have proceeded under A.R.S. § 13–643(C) which permits probation° for the first offender. Also, the defendant maintains that this failure of the judgment to clearly express a finding with respect to the use of a gun requires that the sentence imposed must be set aside. However, both the individual and collective testimony of the victims of the robberies charged in each offense clearly indicated the presence of a gun during the commission of the offense, and thus the trial court's sentence properly reflected the obligation to sentence the defendant to prison under A.R.S. § 13–643(B), rather than allowing the granting of probation.

■ However, the judgment of conviction is technically incorrect, not because of the sentence imposed thereon, but because it does not sufficiently advise the Department of Corrections as to whether the defendant is entitled to consideration for suspension or commutation of sentence, probation, pardon or parole during the first five years of his incarceration. While technically incorrect, the trial court's judgment is not so fatally defective as to require the judgment to be completely set aside. Rather, the sentence imposed should be altered to more clearly reflect the only judgment which the trial court under the evidence could have imposed. Since, in this case, the record unambiguously demonstrates the presence of a gun during the commission of the charged offenses, we choose to exercise our modification power under A.R.S. § 13–1716 rather than remand to the trial court for a specific determination that a gun was used. Accordingly, the judgment is modified to reflect a conviction of armed robbery with a gun as to both counts.

The motion for rehearing is denied.

SCHROEDER, P. J., and WREN, J., concurring.