378 So.2d 1288 (1979)
The STATE of Florida, Appellant,
v.
Walter R. MAIER, Jr., Appellee.
Thomas James BUSIELLO, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 79-227, 79-695.
District Court of Appeal of Florida, Third District.
December 28, 1979.
Rehearing Denied January 28, 1980.
*1289 Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., Janet Reno, State's Atty. and Theda R. James, Asst. State's Atty., for the State.
Milton E. Grusmark, Miami, for Walter R. Maier, Jr., and Thomas James Busiello.
Before PEARSON, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Although it is of course dangerous and forbidden to eat of its fruit, we hold in these cases that one may safely have a meal in a structure partially constructed with lumber made from the poisonous tree. The facts which give rise to the use of this outrageous, but we think appropriate, extension of the all-too-familiar metaphor follow.
On July 11, 1977, in their Coral Gables home, Mr. and Mrs. Shultz were robbed at gunpoint by two men, Maier and Busiello, who took several items of jewelry and other valuables and then fled. Mr. Shultz had had a recent eye operation and could make no identification. Mrs. Shultz, on the other hand, got a good look at and was able to describe them both. For a period immediately after the crime, however, the identity of the offenders remained unknown.
On July 16, 1977, Suffolk County, New York police officers, serving a warrant on a totally unrelated charge, arrested Maier at a condominium in which he and Busiello were living in Long Island, New York. In the course of that arrest, the officers seized pieces of jewelry from a bedroom in the apartment. The trial judge held below, and the state now concedes, that the seizure was unlawful and in violation of the Fourth Amendment. The effect of that determination is the focus of these appeals. This is so because the taking of the jewelry led directly to the identification of Maier and Busiello as the perpetrators of the Coral Gables burglary and armed robbery.
Indisputably, this occurred in an entirely fortuitous fashion. As a matter of routine, the Suffolk County authorities sent descriptions of the jewelry they had seized across the police teletype to several, apparently randomly selected, cities throughout the country. The teletype information came to the attention of Coral Gables police Sgt. James Butler, one of the officers investigating the Shultz robbery. Butler thought he recognized some of the described items as having been taken from the Shultzes and requested the Suffolk County police to forward photographs of the jewelry and of the persons who had occupied the apartment from which it was taken. The New York authorities complied with these requests. On August 24, 1977, the Coral Gables police showed Mrs. Shultz first the written descriptions, and then the photographs of the jewelry seized from the condominium. She positively identified several items as having been taken from her home during the robbery. As a result, about two weeks thereafter, on September 13, 1977, the officers displayed to Mrs. Shultz a photographic lineup which contained the pictures of Maier and Busiello obtained from Sufflok County. The lower court specifically determined *1290  and no attack is made here on that finding  that the photo lineup itself was fairly conducted and was not improperly suggestive. Upon viewing the photo display, Mrs. Shultz quickly and with certainty identified the pictures of both Maier and Busiello as those of the offenders in question.
Based upon her identification, Busiello and Maier were charged in a three-count information filed in the Dade County Circuit Court with the armed robbery of the Shultzes, the armed burglary of their home, and the possession of a firearm in the commission of those felonies. After pre-trial discovery, both defendants moved to suppress (a) the jewelry seized in Suffolk County, New York; (b) Mrs. Shultz's September 13, 1977 out-of-court identifications at the photo lineup and (c) her in-court identification of defendants as those who had burglarized and robbed her. The trial judge suppressed the jewelry as the product of an illegal search; this ruling was concededly correct and is not before us. The out-of-court identification was also suppressed as to both defendants, solely on the basis of the ruling that their photographs would not have been obtained "but for" the clue to their relevance provided by the identification of the illegally seized jewelry. Concerning the in-court identifications by Mrs. Shultz, the trial judge reached a different conclusion as to each of the respective defendants. He concluded that Mrs. Shultz was able to identify Busiello entirely independently of the photo lineup, based solely on her recollection of him at the scene of the crime; the motion to suppress the in-court identification of Busiello was therefore denied. As to Maier, he determined that the photo lineup, while not suggestive, "sparked [Mrs. Shultz's] memory so that she is presently in a position to have a recollection regarding the identification of the defendant," which she would not have had if she had not been shown the offending photos. He therefore suppressed the in-court identification of Maier as also tainted by the unlawful seizure of the jewelry.
After the denial of his motion to suppress the in-court identification, Busiello pled nolo contendere, specifically reserving the right to review the propriety of that ruling.[1] In Case no. 79-695, Busiello seeks review of the judgment and sentence entered against him upon the court's acceptance of that plea. Case no. 79-227 is an appeal by the state from the order suppressing the in-court and out-of-court identifications of Maier. Treating both cases together, we hold that the photographic lineup was not "tainted" by its tenuous connection with the illegally seized jewelry and that neither the out-of-court nor, therefore, the in-court identifications of the defendants were subject to suppression. Accordingly, we affirm Busiello's conviction and reverse the order suppressing the identifications of Maier.
The contentions of both Maier and Busiello are entirely based upon a single simple fact: if the jewelry had not been illegally seized,[2] the police would not have become aware of the defendants' existence and they would not have been identified by Mrs. Shultz; and upon the claim that any evidence which would not have existed but for a violation of the Fourth Amendment must be suppressed as "fruit of the poisonous tree." Primarily because the law is directly contrary to that contention, their arguments for suppression must be rejected. There is simply no blanket "but for" test which results ipso facto in the exclusion of all testimony which is causally related to *1291 an illegal search or seizure.[3] To the contrary, such testimony should be admitted when, as the Supreme Court held in Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963):
[T]he connection between the lawless conduct of the police and the discovery of the challenged evidence has `become so attenuated as to dissipate the taint.' Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312. We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959). [e.s.]
As it was similarly and recently stated in United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268, 277 (1978):
Even in situations where the exclusionary rule is plainly applicable, we have declined to adopt a `per se or "but for" rule' that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest. Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975).
In applying these principles to the cases before us, we must of course focus upon the underlying reason for the existence of the exclusionary rule: to deter government officials from constitutional violations by denying them the use of improperly obtained evidence. See Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956). It is apparent that this policy is more-than-sufficiently vindicated by the exclusion from evidence of the illegally seized jewelry itself, see People v. Griffin, 59 Cal. App.3d 532, 130 Cal. Rptr. 648, 652 (1978), and, on the other hand, would not be furthered in the slightest by precluding evidence of Mrs. Shultz's independent identifications of the defendants as the robbers. Surely, the Suffolk County police officers who actually committed the illegal act will not be rendered any less likely to do it again by their knowledge of such a result. United States v. Ceccolini, supra, at 435 U.S. 280, at 98 S.Ct. 1062, at 55 L.Ed.2d 279. Moreover, there is no evidence of a collusive presearch communication between Coral Gables and New York or of knowledge by the Suffolk County officials of the fact that the Coral Gables offense had even taken place. There was certainly no indication of a deliberate or purposeful desire illegally to secure the jewelry as a means of solving that crime. Compare United States v. Edmons, 432 F.2d 577 (2d Cir.1970). Under these circumstances, it is plain that the eye-witness identification of the defendants was not the result of an "exploitation" of the illegal seizure of the jewelry, see also United States v. Ceccolini, supra, at 435 U.S. 280, at 98 S.Ct. 1062, at 55 L.Ed.2d 268; Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and that the connection between that identification and the adventitious, if unlawful, discovery of a clue to the suspects' identity was so "attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939).
The overwhelming weight of authority supports this holding. The case of Commonwealth v. Crutchley, 242 Pa.Super. 496, 364 A.2d 381 (1976) is almost identical factually to this one. There, the illegal seizure of credit cards, which had been stolen in a robbery, led directly to the investigating police officer's suspicion that Crutchley was one of the two men involved and to the *1292 defendant's subsequent identification by the victim at a photo lineup. Citing and relying upon the likewise similar case of Lockridge v. Superior Court of Los Angeles County, 3 Cal.3d 166, 89 Cal. Rptr. 731, 474 P.2d 683 (1970), cert. denied, 402 U.S. 910, 91 S.Ct. 1387, 28 L.Ed.2d 652 (1971), the court held that the identification testimony was properly not suppressed below. It stated at 364 A.2d 383-384, in language directly applicable here:
We are satisfied that Mr. Mastronardo's [the victim's] identification was based on his personal observation of appellant at the scene of the robbery. Here, clearly, the evidence did not derive from the `exploitation' of any illegality, but instead from a source wholly independent of the illegal search.
* * * * * *
The illegal police action in the case at bar occurred during the investigation of a crime totally unrelated to the crime for which the identification was necessary. It was `pure happenstance' that the police uncovered the credit cards during the illegal search of appellant's apartment for narcotics. The trial judge suppressed the direct product of the illegal search, i.e., the credit cards... . While the illegally seized credit cards led to the connection of appellant with the `Seven-Eleven' robbery, we find that the identification evidence presented by the Commonwealth at trial was so independent of the seizure as to be untainted by any illegality and therefore not within the `fruit of the poisonous tree' prohibition.
In several cases, the actual photograph identified by a witness was secured only after and as a direct result of an unlawful but unrelated arrest of the defendant. Although this situation is less attenuated than the one before us, in which there is no claim that the pictures of Busiello and Maier were themselves illegally obtained,[4] it has been consistently held that the illegal arrest does not render the identification or even the photograph itself inadmissible. The leading authority on this point is People v. McInnis, 6 Cal.3d 821, 826, 100 Cal. Rptr. 618, 494 P.2d 690 (1972), with which we entirely agree. As the court stated at 100 Cal. Rptr. 621, 494 P.2d 693:
To hold that all such pictures resulting from illegal arrests are inadmissible forever because they are `fruits of the poisonous tree' would not merely permit the criminal `to go free because the constable has blundered' (Cardozo, J., in People v. Defore (1926) 242 N.Y. 13, 21, 150 N.E. 585, 587) but would allow the criminal immunity because another constable in another jurisdiction in another case had blundered.
Accord: People v. Pettis, 12 Ill. App.3d 123, 298 N.E.2d 372 (1973); People v. Griffin, 59 Cal. App.3d 532, 130 Cal. Rptr. 648 (1976); State v. Price, 27 Ariz. App. 673, 558 P.2d 701, 705 (1976) ("We fail to see how the purpose of deterring unlawful police conduct would be furthered by suppressing the testimony of known victims of the armed robberies."); see also, United States v. Ceccolini, supra.
For these reasons, we hold that the out-of-court identifications of both defendants by Mrs. Shultz should not have been suppressed. It follows, a fortiori, both that the in-court identification of Maier is likewise admissible[5] and that there was no error in *1293 declining to exclude the in-court identification of Busiello.[6]
The order of suppression as to Maier, which is under review in Case no. 79-227, is reversed and the cause is remanded with directions to deny the motion to suppress the identifications in question.
The conviction and sentence of Busiello, under review in Case no. 79-695, are affirmed.
HUBBART, Judge (concurring).
I concur in the opinion and judgment of the court and would add only that a different question would be presented if, unlike this case, the defendants had been identified by Mrs. Shultz from photographs taken of the defendants after having been unlawfully arrested by the police in New York. No such issue, however, is involved in this case as the defendants make no contention that the photographs in question were the product of an alleged unreasonable seizure of their persons in New York.[1] It is, accordingly, my view that the court's approval of People v. McInnis, 6 Cal.3d 821, 100 Cal. Rptr. 618, 494 P.2d 690 (1972), on this issue is dicta and not an authoritative holding of the instant case. Indeed, McInnis was a 4-3 decision with the dissenters presenting at least a colorable position which I am not prepared, in this case, to reject in favor of the majority position. I would reserve judgment on this issue for another day. See 3 LaFave, Search and Seizure § 11.4, 664-666 (1978).
Beyond that, I think the court is clearly correct in finding that the excluded evidence herein was sufficiently removed from the illegal search and seizure of the jewelry in New York so as to be purged of the primary taint under the fruit of the poisonous tree doctrine. Although the "but for" test is a helpful starting point in applying this doctrine, it is not, as the court properly concludes, the sine qua non of our analysis here. If the "but for" test is satisfied, as it is in this case, we must still inquire whether there are any circumstances which act to dissipate or purge the taint of the initial illegality as to the evidence sought to be excluded. Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Admittedly, this is scarcely a "bright line" test which can be applied with scientific accuracy, but it seems eminently sound, notwithstanding its vagueness, so that the courts may avoid carrying the fruit of the poisonous tree doctrine to extremes which little serve the purposes of the exclusionary rule when weighed against the societal cost for its imposition. Brown v. Illinois, 422 U.S. 590, 608-609, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring).
The instant case is a good example. It surely makes little sense, in terms of deterring future illegal police action, to exclude the pre-trial identification of the defendants from photos which were lawfully seized from them merely because those particular photos would not have been shown to Mrs. Shultz "but for" the illegal search in New York. The societal cost of applying the exclusionary rule to free people from criminal prosecution, notwithstanding evidence *1294 of their guilt, outweighs, in my judgment, whatever minimal deterrent value lies in applying the exclusionary rule to such an extreme. That is, no doubt, a judgment call but, I think, a reasonable one under the circumstances based on the analysis set forth in the court's opinion. We must keep the reach of the exclusionary rule within sensible bounds and I think the court has done so in this case.
NOTES
[1] The parties agree that Mrs. Shultz's identification is the only evidence against Busiello and that the denial of the motion to suppress it was therefore dispositive of the case so as to permit its review on a nolo plea. Brown v. State, 376 So.2d 382 (Fla. 1979).
[2] There is no contention, as in, e.g., People v. McInnis, 6 Cal.3d 821, 100 Cal. Rptr. 618, 494 P.2d 690 (1972) and People v. Pettis, 12 Ill. App.3d 123, 298 N.E.2d 372 (1973), discussed infra, that the photographs of the defendants used in the lineup were themselves improperly secured. The sole claim is that information about the illegally seized jewelry led to the defendants' becoming suspects in the case and thus to the use of the photos in the lineup.
[3] It should be pointed out that the principle that one must demonstrate proper standing to object to an unlawful search itself demonstrates the absence of an absolute rule which precludes the use of unlawfully seized evidence for any purpose. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
[4] See note 2, supra.
[5] The only basis for suppressing the in-court identification of Maier was the effect of what the trial court held to be the unlawful photographic lineup. Our holding that the out-of-court identification was not tainted, without more, requires reversal of that conclusion. Hence, we need not consider the validity of the holding below that the photo lineup, while not suggestive, so jogged the recollection of Mrs. Shultz that she could not have identified Maier at the trial absent the lineup, and that any such in-court identification was therefore also to be excluded. We observe, however, that there is no reason to believe that her recollection of Maier at the scene of the crime would not have been similarly "sparked" by seeing him at the trial. Since the photo lineup was not suggestive so as to cause either a likelihood of misidentification or a reliance upon anything but Mrs. Shultz's memory of Maier when the offense took place, it is difficult to follow the logic of suppressing a proper identification merely because the witness had made a similarly fair identification at an earlier time. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
[6] Busiello contends that his in-court identification should be suppressed because, if the jewelry had not been illegally seized, he would not have been arrested and would therefore not have been in court to be identified. Even if our ruling as to the out-of-court identification were otherwise, we would have no difficulty in rejecting this contention, which takes the rejected "but for" test to its logical, not to say absurd, extreme.
[1] I do not fault defense counsel for failing to make this contention as apparently the record will not support it. First, there is no clear showing that the photographs identified by Mrs. Shultz were taken after the defendants had been arrested in New York even assuming such arrests were unreasonable. Second, it appears clear that the defendant Maier was lawfully arrested in New York pursuant to an arrest warrant on an unrelated charge. Finally, the trial court made no finding on this record that the arrest of either defendant was unreasonable in New York; it held that the warrantless search of the defendants' New York apartment was unreasonable solely because it was conducted without valid consent.